UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

41 NORTH 73 WEST, INC., d/b/a
AVITAT WESTCHESTER AND JET
SYSTEMS,

          Plaintiff,

-against-

COUNTY OF WESTCHESTER, New York,

          Defendant.

-----------------------------------------------------------x

08 Civ. (   )

**COMPLAINT**

Jury Trial Demanded

ORIGINAL

08 CIV. 4523

JUDGE KARAS

Plaintiff 41 NORTH 73 WEST, INC., d/b/a AVITAT WESTCHESTER AND JET SYSTEMS, by its attorneys Lovett & Gould, LLP, for its complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory damages, as well as declaratory and permanent injunctive relief, proximately resulting from violations of Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983 and Plaintiff's rights to free speech and to petition government for the redress of grievances as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff 41 NORTH 73 WEST, INC., d/b/a AVITAT WESTCHESTER AND JET SYSTEMS (hereinafter "Avitat") is a Delaware corporation with its principal offices for the conduct of business located at the Westchester County Airport (hereinafter "Airport") at premises known as 85 Tower Road, White Plains, New York.

4. Defendant COUNTY OF WESTCHESTER, New York (hereinafter "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State. The County is the owner in fee of the Airport. For the past twenty years, except with respect to Plaintiff as set forth *infra*, the County's established custom, practice and/or policy with respect to real property leases at the Airport has consistently been to offer to the incumbent lessee an exclusive opportunity to re-lease and/or renew the lease of the property at the conclusion of the term of any such lease. Every incumbent lessee who has taken advantage of that opportunity has re-leased and/or renewed the lease of the subject property.

## THE FACTS

5. Effective January 30, 2006, Avitat leased from the County real property at the Airport comprising: Hanger E, Bay # 1; an aircraft apron; unimproved land; a joint use parking area; and *inter alia* any real property improvements constructed or installed thereon during the lease term. Subject to the right of first refusal to re-lease the premises and/or renew the lease in accordance with County policy, practice and custom, the otherwise termination date of that lease was to be March 31, 2010. At the time it entered into that lease agreement and continuing to date, Avitat to the County's actual knowledge

has consistently been credit worthy and has enhanced the quality of the Airport's property and operations. Since entry into that lease agreement Avitat entered into aircraft storage agreements with: Morgan Stanley (which has approximately 2,000 employees in the County), McGraw Hill, Met Life, and Ernst & Young.

6. As a lessee at the Airport Avitat is *prima facie* identically situated to all other real property lessees (identified *infra*) at the Airport in all relevant respects. In that connection the County is the lessor with respect to the following lessees and property, each of which is also subject to the right of first refusal as set forth *supra*:

    a. Piedmont Hawthorne Aviation, L.L.C.: Hanger D, Bay #1; aircraft ramp space; unimproved land; Hanger D, Bay #3; use of paved aircraft apron; automobile spaces in common parking lot; and *inter alia* any real property improvements constructed or installed thereon during the lease term,

    b. Citiflight Inc., d/b/a Citigroup Corporate Aviation: Hangar E, Bay #2; paved aircraft apron; unimproved land; joint use automobile parking area; and *inter alia* any real property improvements constructed or installed thereon during the lease term,

    c. Phillip Morris Management Corp.: Hangar D, Bay #2; existing paved aircraft apron; unimproved land; and *inter alia* any real property improvements constructed or installed thereon during the lease term,

    d. JP Morgan Chase Bank: Hangar D-1; automobile parking spaces; aircraft apron; and *inter alia* any real property improvements constructed or installed thereon during the lease term,

    e. Jet Equity, LLC:Hangar D, portion of Bay #1; aircraft ramp; and *inter alia* unimproved land,

f. Signature Flight Support Corporation: Hangars A, C-1, C-2 and G; Corporate Aviation terminal; automobile parking; paved aircraft apron; and *inter alia* unimproved land.

g. United Skyport Corporation: Hangar D, Bay #3; paved aircraft apron; unimproved land; automobile parking; and *inter alia* any real property improvements constructed or installed thereon during the lease term.

h. EJM Building Services, LLC: Hangars 6 and 26; aircraft apron; automobile parking area; and *inter alia* unimproved land,

i. Pepsico, Inc.: Hangars; aircraft ramps; unimproved land; automobile parking; and *inter alia* improvements and fixtures erected or placed thereon in accordance with the lease,

j. International Business Machines Corporation: Hangars; aircraft ramps; automobile parking; and *inter alia* improvements and fixtures erected or placed thereon in accordance with the lease,

k. Westchester Aeronautical Corporation d/b/a Westair: Hangar; aircraft apron; unimproved land; automobile parking, and *inter alia* improvements and fixtures erected or placed thereon in accordance with the lease,

l. Panorama Flight Service, Inc.: Hangar, aircraft apron, unimproved land, automobile parking, and *inter alia* improvements and fixtures erected or placed thereon in accordance with the lease,

m. International Paper Company: Hangar F; aircraft ramps; automobile parking; unimproved land; and any real property improvement constructed or installed thereon during the lease term, and,

4

n. Phillip Morris Management Corp.: Hanger D, Bay #2; aircraft apron; unimproved land; and *inter alia* any real property improvements constructed or installed thereon during the lease term.

7. In November of 2006, in accordance with long-standing County practice, custom and policy Avitat expressed to the County its desire to negotiate a renewal and extension of its lease. After being advised by the County "now is a great time" to do so and at the County's request, Avitat had prepared at a cost of approximately $100,000 a "Conceptual Design and Needs Analysis Report" (hereinafter "design report") that provided for architectural and engineering enhancements to the Airport's real property worth $5,700,000. In that connection Avitat was and continues to date to be, to the County's actual knowledge, willing and able to expend in excess of $6,000,000 in connection with its lease renewal/extension.

8. On January 22, 2007, that design report was submitted by Avitat to the County.

9. Nine days thereafter and on January 31, 2007, the County's Director of Economic Development/Real Estate [Salvatore J. Carrera (hereinafter "Carrera")] advised Avitat in writing with respect to the design report:

> "As usual, it was very impressive and designed for the benefit of the County and [Avitat].
>
> As you know, Avitat has an agreement until March 31, 2010[,] at which time it will be renewed, cancelled or subjected to an RFP.
>
> After careful consideration, we have decided not to move forward on your. . .proposal for a long term lease agreement, but will offer you the opportunity to submit your current proposal toward an RFT

5

[*sic.*]that we want to entertain at this time.

[AVITAT] if not successful in its bid for a long term lease, would have to vacate the premises upon the acceptance and execution of a lease agreement prior to the current expiration of of March 31, 2010."

10. On May 25, 2007, Carrera advised Avitat in writing that the County was going to issue a Request for Proposals and that the County's "main priority is to find a **new** tenant that will enhance the current Airport facility and is credit worthy (emphasis added)".

11. In early June of 2007 the County caused to be published in multiple aviation trade journals an advertisement for lease of the premises that is the subject of Avitat's current lease agreement.

12. On July 18, 2007, Carrera reiterated to Avitat in writing that the County's "main objective is to find a tenant that will enhance the current airport facility and is credit worthy". In that connection he also advised Avitat that in the proposed new lease agreement, a copy of which was provided to Avitat by the County, there were "new business terms that the [County's] Board of Legislators and the [County's] Board of Acquisition and Contract must approve". That correspondence further set forth "mandatory items" for real property improvements to the premises and the required new business terms.

13. Thereafter on September 11, 2007, Avitat advised the County in writing that "[e]ach and every one of the requirements itemized in [its July 18, 2007] correspondence is acceptable to Avitat/Jet Systems and the tenant [Avitat] is further prepared to comply

6

with all of the mandatory items contained in [the County's] list of 'Hangar E-1 Facility Improvements'".

14. By letter dated October 16, 2007, Carrera notified Avitat that there were eight "interested parties that replied" to the County's advertisement and that:

> "After a careful and professional review of all the information, a recommendation will be forwarded to the [County's] administration and Airport Review Board for action. All terms and conditions must be approved by the Board of Legislators and Board of Acquisition and Contract."

15. By "Complaint and Request for Investigation pursuant to 14 C.F.R. Part 16" dated October 19, 2007, and filed with the United States Department of Transportation, Federal Aviation Administration, Avitat expressed concerns that the County of Westchester was: i) engaging in "violations of its federal grant assurances under the Airport and Airway Improvement Act of 1982, as amended, 49 U.S.C. §§40101"; ii) engaging in a "systemic pattern of conduct that economically discriminates against Avitat and other similarly situated Full Service Aviation Fixed Base Operators [including] . . .improperly using PFC funds to subsidize Light General Aviation FBOs"; iii) violating "49 U.S.C. §§40117 and 47107 and AIP Grant Assurances 22 (Economic Nondiscrimination), 23 (Exclusive Rights) and 24 (Fee and Rental Structure)"; iv) providing a "sweetheart deal" with Light General Aircraft Fixed Base Operators; v) "economically discriminate[ing] against Avitat and other Jet FBOs at the Airport"; vi) and a plethora of other acts violative of federal and state law.

16. On December 27, 2007, the County served an answer to the FAA complaint as well as a motion to dismiss substantially grounded in dissembling.

17. On January 14, 2008, Avitat served and filed with the FAA a reply in connection with the FAA complaint, which is currently still pending.

18. By letter dated April 11, 2008, Carrera and the Westchester County Commissioner of Transportation (Lawrence Salley), advised Avitat:

> "Your response to the County's Request for Proposals dated May 25, 2008 [*sic*.] was thoroughly reviewed and considered but the decision has been made to award to another proposer."

19. The County's refusal to extend and/or renew Avitat's lease was arbitrary, capricious, not rationally related to the accomplishment of the lawful work of the Airport as a county agency, and detrimental to the financial well-being and efficient operation of the Airport. Given Avitat's superlative performance of all of its lease obligations, its credit worthiness, and its substantial enhancement of the Airport property/services is completely irrational.

20. The County's refusal to extend and/or renew Avitat's lease was motivated in whole and/or substantial respect by: i) an intent to punish and/or retaliate against Avitat for its FAA Part 16 expressions of concern regarding the County's unlawful conduct at the Airport; ii) an intent to single out and/or "get" Avitat for the Part 16 expressions of concern and deliberately accord Avitat disparate treatment in connection with the renewal and/or re-leasing process; and/or iii) bad faith and/or malice by reason of the FAA Part 16 filing with resulting selective and adverse treatment of Avitat.

21. Under the circumstances the County's conduct, as expressly approved and/or condoned and/or ratified by the County Executive and as impliedly approved and/or condoned and/or ratified by the Board of Legislators: i)violated Avitat's rights as guaranteed by the First Amendment; ii) violated Avitat's right to Equal Protection; iii) caused and/or will imminently cause Avitat to suffer substantial pecuniary losses; iv) has impaired Avitat's business operations at the Airport; v) has impaired Avitat's business relationship with its subtenants and will result in Avitat's loss of its subtenants absent judicial equitable intervention; vi) has caused irretrievable impairment of its reputation in the business community; vii) and other causally related damages.

### AS AND FOR A FIRST CLAIM

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "21", inclusive.

23. Under the premises the County's conduct and/or retaliatory conduct violated Avitat's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A SECOND CLAIM

24. Repeats and realleges as if fully set forth the allegations of fact set forth in paragraphs "1" to "21", inclusive.

25. Under the premises the County's conduct and/or retaliatory conduct violated Avitat's rights to free speech and/or to petition government for the redress of grievances

as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment and order should be entered: a) awarding compensatory damages; b) permanently enjoining the County from denying Avitat a lease renewal; c) declaring the County's conduct violative of Avitat's constitutional rights; d) awarding reasonable attorney's fees and costs; and e) granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       May 13, 2008

LOVETT & GOULD, LLP
By: _____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401